THE PEOPLE OF THE STATE OF NEW YORK ex rel. BALBROOK REALTY CORPORATION et al., Respondents, against WILLIAM W. MILLS et al., Constituting the Tax Commission of the City of New York, Respondents.

CITY BANK FARMERS TRUST COMPANY et al., Appellants.

Submitted October 23, 1945; decided March 7, 1946.

*Edwin W. Cooney* for appellants. I. The tax refund is payable to the mortgagee bank or the receiver in the pending foreclosure action. An overpayment of taxes with funds dedicated to the mortgage is repayable to the mortgagee. The funds from which the overpayment was made were irrevocably dedicated to the mortgage. (*People ex rel. 342 East 57th St. Corp.* v. *Miller,* 262 App. Div. 132, 287 N. Y. 682; *People ex rel. New York Title & Mortgage Co.* v. *Miller,* 262 App. Div. 175, 287 N. Y. 685.) II. A mere oral agreement between the owner

and the mortgagee that the owner's agent would apply income for the benefit of the mortgagee is enforcible. (*Monica Realty Corp.* v. *122 Fifth Ave. Corp.*, 264 N. Y. 52; *Dime Savings Bank* v. *Altman*, 275 N. Y. 62.) III. Effect must be given to the intention of the parties as gathered from all the instruments. (*Manson* v. *Curtis*, 223 N. Y. 313; *Wood* v. *Sheehan*, 68 N. Y. 365.)

*Leon L. Brof* for relators, respondents. I. As between owner and mortgagee, the owner is entitled to the rents and therefore to any refunds of taxes or charges previously paid until there is a default and the mortgagee has taken possession by receiver or through assignment of rents. (*New York Life Ins. Co.* v. *Fulton Development Corp.*, 265 N. Y. 348; *Lofsky* v. *Maujer*, 3 Sand. Ch. 69; *Rider* v. *Bagley*, 84 N. Y. 461; *Sullivan* v. *Rosson*, 223 N. Y. 217; *Wyckoff* v. *Scofield*, 98 N. Y. 475.) II. Under no circumstances could the agreement of January 22, 1934, be construed as an assignment of rents to the mortgagee. (*James* v. *Alderton Dock Yards*, 256 N. Y. 298; *Holmes* v. *Bell*, 139 App. Div. 455; *Wemple* v. *Hauenstein*, 19 App. Div. 552; *Donovan* v. *Middlebrook*, 95 App. Div. 365.) III. Since the taxes here were not paid by the mortgagee out of its own moneys or moneys paid to it or its agent by the owner for the payment of taxes, interest or principal, nor by the mortgagee out of rents collected under an assignment of rents, or through a receiver, it is not entitled to any refund of overpayment of taxes. (*People ex rel. 342 East 57th St. Corp.* v. *Miller*, 262 App. Div. 132, 287 N. Y. 682; *People ex rel. New York Title & Mortgage Co.* v. *Miller*, 262 App. Div. 175, 287 N. Y. 685.)

CONWAY, J. On January 22, 1934, one Cohn executed and delivered to 166 Broadway Corporation a purchase money bond and mortgage payable in installments until its maturity date upon the premises here in question, known as 170 Broadway in New York City. Thereafter on January 26, 1934, that bond and mortgage was assigned to City Bank Farmers Trust Company (hereinafter referred to as City Bank). There were two other mortgages upon the property. The second mortgage was held by one Schlang and a third mortgage by Brown, Wheelock, Harris & Co., Inc. (hereinafter referred to as Brown, Wheelock). Immediately after the execution of the bond and mortgage, Cohn conveyed the premises in question to Balbrook Realty

Corporation (hereinafter referred to as Balbrook). On the same day, January 22, 1934, Balbrook as " Principal " executed a " management contract " with Brown, Wheelock as " Agent " under which the latter agreed to manage the premises, collect the rents and, after the satisfaction of all operating expenses and the making of certain other payments, then to set aside each month one twelfth of the annual taxes against the premises and then one twelfth of the annual interest and amortization requirements on the first mortgage. If there remained any balance of rents, amortization payments due and unpaid on the second mortgage were to be made and if there still remained a balance, the Agent was empowered to retain it on account of principal and interest upon its third mortgage at a rate fixed in the management contract.

To indicate clearly that, while Brown, Wheelock was required to set aside moneys for taxes, interest and payments on principal on the first and subordinate mortgages, it was not intended that the management agreement should enure to the benefit of anyone other than Balbrook and Brown, Wheelock, the following provisions were inserted:

" It is expressly understood and agreed that this agreement shall not be deemed to be made for the benefit of any third party, *including the respective owners and holders of the first and second mortgage* and in no event shall the Agent be liable to the owners and holders of said first and second mortgage respectively for any matter or thing done or omitted to be done by the Agent in connection with this agreement, the management of said premises *or any payment for taxes,* interest, amortization payments or otherwise under this agreement. (Emphasis supplied.)

\* \* \* \* \* \* \*

" Nothing herein contained shall constitute the Agent a mortgagee in possession."

Simultaneously with the execution of the management agreement, there was executed and delivered by Cohn, Balbrook and Brown, Wheelock to 166 Broadway Corporation a letter or instrument which recited that in consideration of the conveyance from 166 Broadway Corporation to Cohn neither Balbrook nor Brown, Wheelock would cancel or materially modify the management agreement without the consent of 166 Broadway

Corporation, and Brown, Wheelock agreed to use due diligence to avoid any act or omission which would justify termination of the management agreement by Balbrook. Again, however, in order that no equities in favor of 166 Broadway Corporation, Balbrook or Brown, Wheelock would arise, it was provided in that letter as follows: " Each of the undersigned parties, for itself agrees *as to such management agreement* and respecting its interest in the said premises, that neither the existence of the same nor *your knowledge of its contents,* nor the carrying out of the arrangements *as to the payments from income collected contemplated therein, nor the receipt of this letter,* nor anything contained therein, shall in any way waive or modify any term, covenant or condition of said purchase money mortgage, and on a default therein, *despite any provision of said management agreement,* you, or any subsequent holder of said mortgage, shall be entitled *to exercise and employ all and any rights,* options and *remedies* allowed or given by the terms of such mortgage to the holder thereof in the event of default, *and to make any applications* to court or bring any proceedings given by law to enforce any such rights and remedies. You are not to be considered a mortgagee in possession by reason hereof." (Emphasis supplied.)

The instant proceeding was brought to review the tax assessment of the City of New York against the premises in question for the tax year 1943–44. After trial at Special Term in 1944, the assessment was· found to be erroneous by reason of overvaluation and a refund of the overpayment was directed. Thereafter, in 1945 the City Bank and a receiver in a foreclosure action commenced by it, brought on a motion for leave to intervene and for a direction that the City of New York make such refund to them. The Appellate Division affirmed the order denying the motion. We granted leave to appeal.

The general rule is that, as between the owner and a mortgagee, the former is entitled to the rents and hence to any refund of taxes paid until there is a default and the mortgagee has had a receiver appointed by the court or has obtained an assignment of rents. (*Sullivan* v. *Rosson*, 223 N. Y. 217; *N. Y. Life Ins. Co.* v. *Fulton Development Corp.*, 265 N. Y. 348, 352.) Certainly the management agreement here may not be construed as an assignment of rents to the first mortgagee.

That mortgagee was not a party to it and Balbrook and Brown, Wheelock expressly provided that it was not to be for its benefit. Even if it could be assumed that it was an agreement made with the first mortgagee under which the owner was to make payments of taxes out of a specific fund, it would not constitute an assignment of rents. (*Thomas* v. *N. Y. & G. L. R. Co.*, 139 N. Y. 163, 179; *James* v. *Alderton Dock Yards*, 256 N. Y. 298, 303.) In the latter case, it was said: "It is settled law in this State that an agreement either by parol or in writing to pay a debt out of a designated fund does not give an equitable lien upon the fund nor operate as an equitable assignment thereof."

There is here no contention that there ever was any agreement other than the management agreement of January 22, 1934, and the supplemental letter of the same date. The taxes were not paid by City Bank as assignee out of its own funds. They were not paid by City Bank out of funds paid to it or its agent by the owner for the purpose of paying the taxes. (See *People ex rel. 342 East 57th Street Corp.* v. *Miller*, 262 App. Div. 132, affd. 287 N. Y. 682.) They were not paid out of rents collected under an assignment of rents or through the appointment of a receiver. Subsequent to the alleged defaults, there was neither an assignment of rents nor a taking of possession by the mortgagee nor any other agreement, oral or written, whereby the rents were pledged, assigned, or trusteed to the mortgagee. This is not a case where the mortgagee has recovered a judgment, nor where a special statute governs after a sale has been had and a deficiency established. (See *People ex rel. N. Y. Title & Mortgage Co.* v. *Miller*, 262 App. Div. 175, affd. 287 N. Y. 685.) This is not a case where subsequent to the claimed defaults, the owner has committed any acts amounting to an estoppel. There was here no forbearance as in *Monica Realty Corp.* v. *122 Fifth Ave. Corp.* (264 N. Y. 52.) On the contrary, in the letter which we have quoted (*supra*) Balbrook agreed that there should be no forbearance. Equity could help the appellants if there were any equities existent. Here, the assignor of City Bank, Balbrook and Brown, Wheelock carefully contracted for their own purposes that there should be no equities. Counsel urges that there is inconsistency between the management agreement and the letter because the letter provided that the agreement between Brown,

Wheelock and Balbrook should be neither canceled nor materially modified without the written consent of the appellants' assignor. No doubt the assignor of City Bank wished the benefit of the management of a responsible agent which had just been appointed. That would not lead to a finding of inconsistency. Moreover, any claim of inconsistency has been resolved against the appellants. More likely it seems that no one ever contemplated an overpayment and consequent refund of taxes back in 1934 when the instruments were drawn.

The order should be affirmed, with costs.

THACHER, J. (dissenting). With the statement of the general rule by the majority that, as between the owner and a mortgagee, the former is entitled to any refund of taxes until there is a default and the mortgagee has had a receiver appointed by the court or has obtained an assignment of rents, we are in accord. (*Sullivan* v. *Rosson,* 223 N. Y. 217; *N. Y. Life Ins. Co.* v. *Fulton Development Corp.,* 265 N. Y. 348.) We agree, also, that this general statement of the rule must be qualified to meet the equities which may arise in any case. (*Sullivan* v. *Rosson, supra.*) In this case we believe there was such an equity. For that purpose no special agreement need be shown or any actual assignment or strict estoppel. The circumstances affecting the equities of the parties will suffice and may not be ignored. (*Monica Realty Corp.* v. *122 Fifth Ave. Corp.,* 264 N. Y. 52, 55.) In that case the senior mortgagee permitted the junior mortgagee to go ahead with foreclosure proceedings, provided the receiver should be instructed, after payment of operating expenses, to turn over the balance of his collections to the senior mortgagee. It was held that good faith required that such an understanding be upheld. The arrangement in that case provided for the payment of the net proceeds to the senior mortgagee. Here there was a similar arrangement, and the third mortgagee, who was allowed to go into possession and to manage the property, was required to pay out of the proceeds taxes and interest and amortization charges required to be paid to the first mortgagee under the terms of the mortgage. Contemporaneously with the making of this arrangement, the mortgagor, the third mortgagee and the original holder of the first mortgage executed and delivered to the 166

Broadway Corporation an instrument in writing reciting that this agreement would not be canceled, modified or abrogated without the consent of the first mortgagee. This promise was recited to have been given in consideration of the conveyance of the mortgaged premises to the mortgagor, who gave back the purchase money mortgage to the first mortgagee. To be sure, it was intended that neither this assurance nor the management agreement itself should disturb the terms and provisions of the mortgage or any rights or remedies provided thereunder, including, but not limited to, foreclosure and the appointment of a receiver. The delivery of these written assurances to the first mortgagee was, however, a fact and a representation upon which the mortgagee was invited to rely if he wished to do so. There was no other conceivable purpose for the execution and delivery of the document. The original mortgagee and the present holder of the mortgage — one of the appellants herein — having refrained from exercising the right to foreclose and be possessed of the rents, we think that in equity and good conscience the tax refund should be paid to the present holder of the mortgage. These taxes which are to be refunded were in fact paid by the third mortgagee out of rents collected from the tenants of the mortgaged premises and should have been paid to the first mortgagee under the terms of the management contract.

We dissent from the opinion of the court and vote to reverse the judgment appealed from, with directions for further proceedings in accordance with this opinion, an issue having been raised as to the date of the default.

LEWIS, DESMOND, DYE and MEDALIE, JJ., concur with CONWAY, J.; THACHER, J., dissents in opinion in which LOUGHRAN, Ch. J., concurs.

Order affirmed.